UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TUAN QVOC BUI,<br><br>                     Petitioner,<br><br>v.<br><br>WARDEN OF THE OTAY MESA DETENTION FACILITY, et al.,<br><br>                     Respondents. | Case No.: 25-cv-2111-JES-DEB<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241**<br><br>[ECF No. 1, 12] |

Before the Court is Petitioner Tuan Qvoc Bui's ("Petitioner" or "Bui") Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. ECF No. 1. Pursuant to the Court's briefing schedule (ECF No. 5), Respondents filed a return to the petition and Petitioner filed a traverse based on the original petition. ECF Nos. 10, 11. Petitioner then filed an Amended Petition, and the parties agreed upon a further briefing schedule. ECF No. 12. Respondents filed a return on the Amended Petition and Petitioner filed a traverse. ECF Nos. 14, 15. Finding the matter appropriate for resolution on the papers, for the reasons set forth below, the Court **GRANTS** the Writ of Habeas Corpus.

## I. BACKGROUND

### A. Amended Petition

Petitioner alleges the following factual background in his Amended Petition. He is a native of Vietnam who moved to the United States with his mother in 1975 after she

1  married a U.S. serviceman. ECF No. 12 at 3. In 2015, Petitioner was convicted of
2  possession for sale of MDMA. *Id.* Based on this conviction, in May 2018, he was
3  subsequently ordered removed. *Id.* At that time, Immigration and Customs Enforcement
4  ("ICE") held him for over 4 months but was unable to obtain travel documents and remove
5  him. *Id.* Thus, Petitioner was released on an order of supervision. *Id.*

6  After release, Petitioner lived in the United States for the next seven years. *Id.* He
7  alleges that he never missed a check-in with ICE, had no further convictions, and held a
8  steady job as a finance manager with Long Beach Honda. *Id.* On May 7, 2025, Petitioner
9  was detained at his regular check-in with ICE. *Id.* Petitioner has since been held in
10 detention at the Otay Mesa Detention Center. *Id.*

11 In his Amended Petition, Petitioner asserts two claims: (1) Respondents are
12 detaining him without a significant likelihood of removing him to Vietnam, in violation of
13 *Zadvydas v. Davis*, 533 U.S. 678 (2001), 8 U.S.C. § 1231(a)(6), and the Due Process
14 Clause; and (2) ICE failed to comply with its own procedures to re-detain him, in violation
15 of the Fifth Amendment and the Administrative Procedures Act. *Id.* at 5-10.

16 **B.   ICE's Actions Post-Detainment**

17 In support of its return, Respondents offer a declaration from ICE Deportation
18 Officer Daniel Negrin ("Officer Negrin") regarding actions taken following Petitioner's re-
19 detainment. ECF No. 14-1. He alleges that a week after re-detainment, on May 14, 2025,
20 San Diego's Enforcement and Removal Operations ("ERO"), started the process of
21 obtaining Petitioner's foreign identify documents. *Id.* ¶ 7. On June 25, 2025, he alleges that
22 ERO submitted these documents for English translation, which was returned on June 30,
23 2025. *Id.* ¶ 8. On August 29, 2025, he alleges that ERO submitted additional documents
24 for translation, which was returned on September 5, 2025. *Id.* ¶ 9. Finally, on September
25 17, 2025, ERO submitted a request for travel documents to Vietnam for Petitioner. *Id.* ¶
26 10. Based on his experience, Officer Negrin states that he "expects to receive Petitioners
27 [Travel Document] by the end of this month, October 2025" and that Petitioner's removal
28 to be effectuated on or before December 1, 2025. *Id.* ¶¶ 13-21.

## II.  LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A court may grant a writ of habeas corpus to a petitioner who demonstrates to be in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Traditionally, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, challenges to immigration-related detention are within the purview of a district court's habeas jurisdiction. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

## III.  DISCUSSION

As stated above, Petitioner brings two claims to argue that he should be released from detention: (1) Respondents are detaining him without a significant likelihood of removing him to Vietnam, in violation of *Zadvydas*, 8 U.S.C. § 1231(a)(6), and the Due Process Clause; and (2) ICE failed to comply with its own procedures to re-detain him, in violation of the Fifth Amendment and the Administrative Procedures Act. Because the Court finds below that Claim 2 is meritorious and justifies Petitioner's release, the Court will only address this claim in this Order.

"The Due Process Clause of the Fifth Amendment prohibits the Government from depriving individuals of their life, liberty, or property, without due process of law." *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). "[T]he Due Process Clause applies to all persons within the United States, including aliens, whether their presence is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 679. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint— lies at the heart of the liberty that Clause protects." *Id.* at 690. A person at risk of a suffering

a serious loss being given notice and an opportunity to be heard, in a meaningful manner and at a meaningful time, is the essence of procedural due process. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

The detention and release of noncitizens that are subject to a final order of removal is governed by 8 U.S.C. § 1231. This statute provides that "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." 8 U.S.C. § 1231(a)(1)(A). "If the alien does not leave or is not removed within the removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General." *Id*. § 1231(a)(3).

Supervised release and any revocation of such release thereafter is governed by either 8 C.F.R. § 241.4 or 8 C.F.R. § 241.13. *Diaz v. Wofford*, No. 1:25-CV-01079 JLT EPG, 2025 WL 2581575, at *4 (E.D. Cal. Sept. 5, 2025). Here, in Petitioner's case, the Notice of Revocation of Release cites to 241.4 as the basis for his revocation. ECF No. 14-2 at 14; *see* ECF No. 14 at 7-8. Revocation under § 241.4(l) provides two ways for supervised release to be revoked:

> (1) Violation of conditions of release. Any alien described in paragraph (a) or (b)(1) of this section who has been released under an order of supervision or other conditions of release who violates the conditions of release may be returned to custody. Any such alien who violates the conditions of an order of supervision is subject to the penalties described in section 243(b) of the Act. Upon revocation, the alien will be notified of the reasons for revocation of his or her release or parole. The alien will be afforded an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification.
>
> (2) Determination by the Service. The Executive Associate Commissioner shall have authority, in the exercise of discretion, to revoke release and return to Service custody an alien previously approved for release under the procedures in this section. A district director may also revoke release of an alien when, in the district director's opinion, revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner. Release may be revoked in the exercise of discretion when, in the opinion of the revoking official:

> (i) The purposes of release have been served;
>
> (ii) The alien violates any condition of release;
>
> (iii) It is appropriate to enforce a removal order or to commence removal proceedings against an alien; or
>
> (iv) The conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate.

8 C.F.R. § 241.4(l). Respondents do not appear to suggest that Petitioner violated the terms of his supervised release (*see generally* ECF No. 14), ruling out § 241.4(1)(1) as a source of his revocation. Rather, they appear to rely on § 241.4(l)(2).

Section 241.4(l)(1) explicitly requires that "Upon revocation, the alien will be notified of the reasons for revocation of his or her release or parole. The alien will be afforded an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." These requirements for notice and for an initial information interview are not explicitly required in § 241.4(l)(2), but courts have held that the same requirements constrain revocation of release under this second provision as well. *See Diaz*, 2025 WL 2581575 (citing various district court cases that have rejected the government's arguments that these provisions do not apply to § 241.4(l)(2)); *Constantinovici v. Bondi*, No. 3:25-CV-02405-RBM-AHG, 2025 WL 2898985, at *4 (S.D. Cal. Oct. 10, 2025) ("District courts have consistently rejected this argument and held that § 241.4(l)(1)'s procedural requirements apply equally to revocation of a noncitizen's release pursuant to § 241.4(l)(2)."). Thus, as applicable to this provision, the Court will address the issues of notice and informal interview below.

However, as an initial matter, the Court first addresses Respondents' argument that these regulations governing revocation of supervised release do not provide any substantive rights that override their statutory detention authority, seeming to suggest that a due process violation therefore cannot be sustained. ECF No. 14 at 8. While Respondents cite to one

recent district court case within the Ninth Circuit to support its position (*id.*), the Court finds that the weight of the authority among other district courts within this circuit takes the opposition position. *See Diaz*, 2025 WL 2581575, at *7 (E.D. Cal. Sept. 5, 2025) ("DHS's failure to follow its own procedural regulations may constitute a due process violation."); *M.S.L. v. Bostock*, No. 6:25-CV-01204-AA, 2025 WL 2430267, at *8 (D. Or. Aug. 21, 2025) ("Although ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody, they have a protected liberty interest in remaining out of custody."); *Constantinovici*, 2025 WL 2898985, at *5 ("Both 8 C.F.R. § 241.4 and 8 C.F.R. § 241.13 were intended to 'provide due process protections to [noncitizens] following the removal period as they are considered for continued detention, release, and then possible revocation of release . . . .'") (citation omitted); *Guillermo M. R. v. Kaiser*, No. 25-CV-05436-RFL, 2025 WL 1983677, at *5 (N.D. Cal. July 17, 2025) ("The fact that Petitioner is subject to discretionary conditions of release likewise does not mean he lacks a protectable liberty interest and can be re-detained without process."). Thus, the Court finds that failure by Respondents to follow their own regulations, if found, may constitute a due process violation.

### A.     Initial Information Interview

First, Petitioner argues that Respondents conceded in their return to his Amended Petition that he never received an initial interview. ECF No. 15 at 4. The Court agrees. In the return, Respondents state that "[t]here is no record that Petitioner was provided with an informal interview during which he could respond to the reasons stated for revocation." ECF No. 14 at 8. This is confirmed based on a review of the documents submitted by Respondents. *See generally* ECF No. 14-2. The only record of an interview in Respondents' documents are for an interview that was conducted around September 5, 2025 (*see* ECF No. 14-2 at 19-22), but this was pursuant to the regulations that require a review after the initial period of 90 days and not the initial informal interview required under § 241.4(l). This does not suffice to meet the requirement for a "prompt" informal interview required under Respondents' own regulations and does not work to cure this

violation. *See, e.g.*, *M.S.L.*, 2025 WL 2430267, at *11 (holding that informal interview was not sufficiently "prompt" where it took place twenty-seven days after revocation).

Courts have found a due process violation where no informal interview took place after the revocation of release. *Id.* (collecting cases); *Constantinovici*, 2025 WL 2898985, at *6 (due process violation where "[n]othing in the record indicates that Petitioner was provided with an interview in connection with the revocation of his release or otherwise afforded an opportunity to respond to the reasons for his re-detention"); *Delkash v. Noem*, No. 5:25-CV-01675-HDV-AGR, 2025 WL 2683988, at *5 (C.D. Cal. Aug. 28, 2025) (same where there was "no evidence that [petitioner] has been afforded an informal or formal interview"); *Phan v. Noem*, No. 3:25-CV-02422-RBM-MSB, 2025 WL 2898977, at *4 (S.D. Cal. Oct. 10, 2025) (finding same where no interview was conducted).

### B. Sufficiency of the Notice

Second, Petitioner argues that the notice provided to him when he was re-detained was not sufficient in explaining the reasoning for the revocation of his supervised release. ECF No. 15 at 4-5. The notice, dated the day he was re-detained on May 7, 2025, states as follows:

> This letter is to inform you that your case has been reviewed, and it has been determined that you will be kept in the custody of U.S. Immigration and Customs Enforcement (ICE) at this time. This decision has been made based on a review of your immigration and criminal history.
>
> Based on the above, and pursuant to 8 CFR 241.4, you are to remain in ICE custody at this time.

ECF No. 14-2 at 14. On the same date, Petitioner was also provided with a Warrant of Arrest (*id.* at 16) and a Notice of Custody Determination (*id.* at 18), but neither provide any further reasoning as to the revocation of supervised release.

In *M.S.L*, the court reviewed and held deficient a notice that stated "in vague terms, that the revocation decision was 'made based on a review of your case; your existing order of removal; and a determination that there is a significant likelihood of your removal in the reasonably foreseeable future.'" *M.S.L.*, 2025 WL 2430267, at *10. Similarly, in *Perez-*

*Escobar v. Moniz*, No. 25-CV-11781-PBS, 2025 WL 2084102, at *2 (D. Mass. July 24, 2025), a case cited favorably within this circuit by the *Diaz* district court, the court held insufficient a notice that stated "generically that officials had reviewed [petitioner's] 'official alien file' and determined 'there are changed circumstances in your case,' including that he was 'subject to an administratively final order of removal' and that DHS 'determined the purpose of your release has been served and it is appropriate to enforce the removal order.'" Also, in *Delkash*, the court held that "the government cannot conflate the reason for removal with the reason for revocation of release" when the government pointed to the petitioner's "criminal activities" for his re-detention. *Delkash*, 2025 WL 2683988, at *5.

Compared to the level of details and reasoning provided in these cases, the notice here fares no better. The mere statement that the re-detention decision was "based on a review of your immigration and criminal history" is arguably even less detailed than the statements in *Perez-Escobar* and *M.S.L.* Thus, the Court finds that the notice here is insufficient and does not provide Petitioner with adequate reasons for the revocation of his release.

* * * * *

In summary, the Court concludes that Respondents failed to follow their own regulations in re-detaining Petitioner by failing to: (1) state an adequate basis to revoke Petitioner's release pursuant to of 8 C.F.R. § 241.4(l); and (2) provide Petitioner with a "prompt" informal interview so that he could contest the reasons for his revocation, as required under f 8 C.F.R. § 241.4(l). Like many other district courts within this circuit, the Court finds that these failures constitute a violation of Petitioner's due process rights and justifies his release. *Diaz*, 2025 WL 2581575, at *9; *M.S.L.*, 2025 WL 2430267, at *12; *Constantinovici*, 2025 WL 2898985, at *7; *Phan*, 2025 WL 2898977, at *5; *Delkash*, 2025 WL 2683988, at *6.

25-cv-2111-JES-DEB

Accordingly, Petitioner's habeas petition is **GRANTED** on this ground, and Petitioner is ordered **RELEASED**. In light of the disposition, the Court declines to address the remaining claims in the Amended Petition.

### IV.  CONCLUSION

For the reasons stated above Petitioner's Writ of Habeas Corpus is **GRANTED**. Respondents are **ORDERED** to immediately release Petitioner from custody, subject to his preexisting Order of Supervision. The Parties are **ORDERED** to file a Joint Status Report no later than **5:00 p.m.** on **October 28, 2025**, confirming that the Petitioner has been released. The Clerk of Court is **ORDERED** to **CLOSE** this case.

**IT IS SO ORDERED.**

Dated: October 23, 2025

_____
Honorable James E. Simmons Jr.
United States District Judge